| | |
|---|---|
| **KAREN BROYLES,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**RAGINGBULL.COM, LLC**, a Delaware company,<br><br>*Defendant.* | Case No.<br><br>**COMPLAINT--CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Karen Broyles ("Plaintiff" or "Broyles") brings this Class Action Complaint and Demand for Jury Trial against Defendant RagingBull.com, LLC ("RagingBull"), to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited text messages to consumers, including more than one text message to phone numbers registered on the National Do Not Call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by Defendant's actions. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Broyles is a Limestone, Tennessee resident.

2. Defendant RagingBull is a Delaware incorporated company that is headquartered in New Hampshire and which conducts business throughout this District, Tennessee, and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant since Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District. Venue is appropriate since the Plaintiff is located in this District.

## TELEMARKETING INTRODUCTION

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in October 2020 alone, at a rate of 137.2 million per day.[1]

14. Unwanted calls are the most common type of consumer complaint made to the FCC.[2]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

---

1 https://robocallindex.com/
2 https://opendata.fcc.gov/Consumer/CGB-Consumer-Complaints-Data/3xyp-aqkj

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[3]

## FACTUAL ALLEGATIONS

16. RagingBull is a for-profit company that provides consumers with training and guidance in stock trading.[4]

17. RagingBull promotes its services using text messages.

18. These text messages are being sent to consumers regardless of whether RagingBull has the consent necessary to send such text messages to consumers, including to consumers who have opted-out from RagingBull's services, such as Plaintiff.

19. RagingBull provides its members with instructions for closing their RagingBull account.

20. The refund policy for Bullseye Trades and other RagingBull programs states that a consumer can close their account using the Contact Us page on RagingBull.com:

> **Raging Bull Refund Policy**
>
> Because members immediately benefit from the knowledge of the stats, analytics or from Raging Bull, we do not give refunds. You should recognize that investing and trading is a marathon, not a sprint so every last piece of information that can help you learn along the way and give you "an edge" over your competitors is worth investing in, especially when that information costs less per month than a night out of dinner and drinks aka invest in your education!
>
> To remove yourself from auto renew and cancel your account, please use the "contact us" page here. **We ask that you request a termination no later than 2 full business days before your renewal**. Refunds crush my merchant status and if you're ever tried to get a merchant to run a business like I'm running, you fully understand how sensitive this relationship is. Your billing expiration date can be found by keeping track of your start date or emailing me requesting when your membership is up for renewal. **Again, if you forget to close your account before billing recurs, this is your fair warning there are no refunds**.[5]

---

3 https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
4 https://www.facebook.com/pg/RagingBullTrading/about/?ref=page_internal
5 https://ragingbull.com/tos/refund.html

21. The Contact Us page that the refund policy directs the consumer to states the contact email support@ragingbull.com.[6]

22. As per RagingBull's instructions, a consumer should send an email to support@ragingbull.com in order to terminate a membership account, which is exactly what Plaintiff did.

23. Despite the termination of membership accounts, RagingBull continues to send unsolicited text messages to former members.

24. Consumers have posted complaints online, including complaints directed to RagingBull about their inability to get the text messages to stop. This is a small sampling of complaints consumers have posted about RagingBull's text messages:

**RagingBull Better Business Bureau Complaints:**
- "I do not want their service. I have called and left messages trying to cancel this often. They never return calls. They never ever acknowledge that I called or call me back. This is not fair to read their paperwork and have them say I accepted their terms and conditions when I did not. I have not accessed the information. They keep texting me even when I tell them to stop they send more."[7]
- "I have just acquired the mobile number XXX-XXX-XXXX from the carrier and I am receiving undesired SMSs from their system "Weekly Money Multiplier". I have just acquired the mobile number XXX-XXX-XXXX from the carrier and I am receiving several undesired SMSs from their system "Weekly Money Multiplier". After some personal research, I have contacted them on their form online asking to remove my number from their SMS distribution list, without success."[8]

**Complaints Posted on Spam Reporting Websites:**
- "Scam Text; Opt Out is ignored. Spam continued More Aggresively, only option was to block number."[9]
- "spam texts"[10]

---

6 https://ragingbull.com/contact/
7 https://www.bbb.org/us/nh/lee/profile/financial-services/raging-bull-llc-0051-92047360/complaints
8 *Id.*
9 https://shortcodes.org/uncategorized/59224-short-code/
10 *Id.*

- "Received multiple texts from short code 59224 even after I requested to 'Stop' and it's linked me to eventbrite.com…"[11]
- "Can't opt-out… Scam! Scam! Scam! Spamming!"

**Plaintiff Received Multiple Unsolicited Text Messages From Defendant After Cancelling Her Account, Despite Having Her Phone Number Registered on the DNC**

25. Plaintiff Broyles registered her cell phone number with the DNC on August 21, 2004.

26. Plaintiff Broyles's uses her cell phone for personal use only. It is not associated with a business.

27. On April 16, 2020, Plaintiff registered and paid for a 7-day account with Bullseye Trades, a program that RagingBull owns and operates which provides subscribers with suggested stock trade options from Jeff Bishop, a co-owner of RagingBull.[12]

28. On May 8, 2020 at 3:13 PM, Plaintiff sent the following cancellation email to RagingBull in order to terminate her RagingBull account:

> From: KBroyles
> To: Support@RagingBull.com
> Sent: 2020-05-08 3:13:56 PM
> Subject: Cancellation of account
>
> Please cancel my account effective immediately. Please cancel all automatically renewals as well.
> Thank you
> Karen Broyles
>
> Sent from Xfinity Connect Application

---

11 *Id.*
12 https://bullseyeoptiontrading.com/training4/

29. On June 25, 2020 at 2:53 PM, more than two months *after* Plaintiff cancelled her account with RagingBull, Plaintiff received an unsolicited text message from Defendant using shortcode 59224 to her cell phone:

> 2:53 PM
> How did I take my trading to the next level? Find out here. smsg.io/wGr0m Reply STOP to opt-out.

30. As the above text message does not state a company name, Plaintiff was not aware that the text message was sent by RagingBull since the text message does not identify who it is being sent by or which service it is promoting.

31. Upon information and belief, including other text messages Plaintiff received from Defendant using shortcode 59224 and website links beginning with smsg.io, when smsg.io/wGr0m was visited, it led to the RagingBull website.

32. On August 14, 2020 at 11:16 AM, Plaintiff received a 2nd unsolicited text message to her cell phone from Defendant, again using shortcode 59224 and using a smsg.io link:

> 11:16 AM
> The "money pattern" just popped up in these two ETFs. smsg.io/yOC1i Reply STOP to opt-out.

33. The above referenced text messages and all those that followed it were sent more than 90-days after Plaintiff terminated her account with Defendant RagingBull.

34. On August 18, 2020, Plaintiff received a third unsolicited text message from Defendant to her cell phone using shortcode 59224 and another link beginning with smsg.io:

> Tuesday 4:16 PM
>
> Today we're taking a look at alternative investments. I'm sharing which is MY favorite and how you can join. smsg.io/FRXNv Reply STOP to opt-out.

35. When the link smsg.io/FRXNv is visited, it leads directly to the RagingBull.com website: https://app.ragingbull.com/checkout/package/aii-special-offer-0?utm_source=iscaiaii&utm_medium=s&utm_campaign=aiiproductche&utm_content=fbdm081820415pm&utm_term=rc.[13]

36. On August 19, 2020, Plaintiff was inundated with 4 unsolicited text messages from Defendant to her cell phone, all of which were sent from shortcode 59224 and with a link beginning with smsg.io:



> Yesterday 11:42 AM
>
> 11 for 11 Record in August on these daily option trade alerts. Join This Genius Options Trader Live Today at 11AM EST. Private Training Room: smsg.io/ZJTuM Reply STOP to opt-out.

> Yesterday 12:04 PM
>
> Trading is stressful - take a moment to read my tips to help! smsg.io/E8Wy1 Reply STOP to opt-out.

> Yesterday 6:33 PM
>
> INVITE ONLY EVENT: Add the weekends to your trading plan. smsg.io/412OM Reply STOP to opt-out.

> Yesterday 8:06 PM
>
> It's almost the weekend, but are you ready for it? Join me tomorrow! smsg.io/b3CFN Reply STOP to opt-out.

37. As of August 23, 2020, each of the above text messages features a link that leads to a RagingBull.com website.

---

13 As of August 23, 2020 - Smsg.io/FRXNv leads directly to a RagingBull.com website as per Charles, a URL tracking service.

38. On August 20, 2020, Plaintiff received 2 more unsolicited text messages from Defendant to her cell phone, both of which were sent from shortcode 59224 and with a link beginning with smsg.io:



39. Based on an investigation conducted by Plaintiff's attorneys, when the links are visited in the 2 above shown text messages, they both lead to the same website page: https://app.ragingbull.com/join-room/pp-platinum?utm_source=irbjwwwt&utm_medium=s&utm_campaign=wwtntajnr&utm_content=fjwall08202011-30-am&utm_term=nhc.[14]

40. On August 21, 2020 at 12:47 PM, Plaintiff received an unsolicited text message from Defendant using phone number 201-279-5570 to her cell phone:



41. Based on an investigation conducted by Plaintiff's attorneys, when the link smsg.io/DaC9C is visited, it leads directly to the RagingBull website: https://app.ragingbull.com/checkout/package/wide/monday-

---

14 As of August 23, 2020 – smsg.io/CKWEU and smsg.io/ZdKWA lead directly to a RagingBull.com website as per Charles, a URL tracking service.

movers?utm_source=irbjbmmv&utm_medium=s&utm_campaign=mmvproductche&utm_content=fjball08212012-45-pm&utm_term=sp15 where RagingBull offers paid plans for its services.



42. On August 22, 2020 at 9:34 AM, Plaintiff received another unsolicited text message from Defendant using phone number 201-279-5570 to her cell phone:



43. Based on an investigation conducted by Plaintiff's attorneys, when the link smsg.io/BHkwn is visited, it leads directly to the RagingBull website: https://events.ragingbull.com/mobc-

---

15 As of August 23, 2020 - smsg.io/DaC9C leads directly to a RagingBull.com website as per Charles, a URL tracking service.

reg/?utm_source=irbkdopr&utm_medium=s&utm_campaign=oprmecreg&utm_content=fjwall08 22209-30-am&utm_term=nhc.[16]

44. On August 23, 2020, Plaintiff received 2 more unsolicited text messages from Defendant using phone number 201-279-5570 to her cell phone:



45. Based on an investigation conducted by Plaintiff's attorneys, when the links smsg.io/C0QkJ and smsg.io/rcGfP are visited, they both lead directly to the RagingBull website: https://app.ragingbull.com/join-room/rb-free.[17]

46. On August 23, 2020, Plaintiff texted "Stop" to 201-279-5570 at 5:20 PM and received an immediate automated response confirming that she was opted-out:

---

[16] As of August 23, 2020 - smsg.io/BHkwn leads directly to a RagingBull.com website as per Charles, a URL tracking service.
[17] As of August 31, 2020 - as per Charles, a URL tracking service.



47. On August 23, 2020, Plaintiff texted "Stop" to shortcode 59224 at 5:23 PM and received an automated response confirming that she was opted out from 201-279-5570.

48. Plaintiff terminated her account with RagingBull, but RagingBull continued to solicit Plaintiff to purchase its packages after the account was terminated.

49. In addition, Defendant did not identify its company name in the text messages Plaintiff received after terminating her RagingBull account.

50. The unauthorized text messages sent by Defendant RagingBull, as alleged herein, have harmed Plaintiff Broyles in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

51. Seeking redress for these injuries, Plaintiff Broyles, on behalf of herself and class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47

U.S.C. § 227, et seq., which prohibits unsolicited telemarketing to phone numbers registered on the DNC.

## CLASS ALLEGATIONS

52. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and L.R. 23.2 on behalf of herself and all others similarly situated and seeks certification of the following class:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time within any 12-month period (2) for substantially the same reason Defendant called Plaintiff (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days.

53. The following individuals are excluded from the class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; and (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Broyles anticipates the need to amend the Class definitions following appropriate discovery.

54. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the class such that joinder of all members is impracticable.

55. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the class, and those questions predominate over any questions that may affect individual members of the class. Common questions for the class include, but are not necessarily limited to the following:

(a) whether Defendant's agents sent more than one text message to phone numbers that are registered on the DNC such as those of Plaintiff and members of the class;

(b) whether Defendant's text messages were solicitations;

(c) whether Defendant had prior express consent to send the text messages;

(d) whether Defendant's conduct constitutes a violation of the TCPA;

(e) whether members of the class are entitled to treble damages based on the willfulness of Defendant's conduct.

56. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the class and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the class.

57. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the class and as a whole, thereby requiring the Court's imposition of uniform relief.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Do Not Call Registry Class)

58. Plaintiff repeats and realleges paragraphs 1 through 58 of this Complaint and incorporates them by reference.

59. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

60. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[18]

61. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

62. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

63. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

64. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call/text message in a 12-month period by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class are entitled to up to $1,500 in damages for each violation.

---

18 *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attaasdfasdfasdfchmatch/FCC-03-153A1.pdf

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the class, pray for the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of the undersigned counsel as counsel for the class;

D. An award to Plaintiff and the class of damages and costs, as allowed by law;

E. Leave to amend this Complaint to conform to the evidence presented at trial; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Dated: November 19, 2020

Respectfully Submitted,

By: */s/ Joseph O. McAfee*
Joseph O. McAfee (Bar # 029291)
McAfee & McAfee, PLLC
joseph@mcafeeattorneys.com
100 West Summer Street
Greeneville, TN 37743
(423) 972-4391

Avi R. Kaufman* (FL Bar # 84382)
KAUFMAN P.A.
kaufman@kaufmanpa.com
400 NW 26th Street
Miami, FL 33127
(305) 469-5881

Stefan Coleman* (FL Bar # 30188)
Law Offices of Stefan Coleman, P.A.
law@stefancoleman.com
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
(877) 333-9427
*Attorneys for Plaintiff and the putative Class*

*Pro Hac Vice motion forthcoming